(953 P.2d 681)

No. 76,201

STATE OF KANSAS, *Appellee,* v. NIKKI L. LAFOE, *Appellant.*

Opinion filed October 31, 1997.

*Debra J. Wilson,* assistant appellate defender, and *Jessica R. Kunen,* chief appellate defender, for appellant.

*Charles R. Reimer* and *Thomas J. Schultz,* assistants district attorney, *Nola Foulston,* district attorney, and *Carla J. Stovall,* attorney general, for appellee.

Before GREEN, P.J., ROYSE, J., and WAHL, S.J.

GREEN, J.: This is an appeal by Nikki L. Lafoe from jury convictions of two counts of aggravated battery and one count each of DUI and failure to maintain a single lane. In pretrial and post-trial motions, Lafoe contended that he should have been charged with simple battery instead of aggravated battery. Lafoe also argued that his DUI and traffic convictions were multiplicitous with his convictions for aggravated battery. On appeal, Lafoe repeats these arguments. He further argues that the trial court committed reversible error in overruling his objections to the closing remarks of the prosecutor. We disagree and affirm.

After working a double shift, Lafoe played poker and drank several beers. While driving home, Lafoe crossed the center line and collided with an oncoming car. It is undisputed that the occupants of the car, Robert and Joan Warne, suffered severe and multiple injuries. Although Lafoe refused a sheriff officer's request to take a blood test, blood drawn for medical reasons revealed that his blood alcohol level was .172.

A jury convicted Lafoe of one count of aggravated battery in violation of K.S.A. 21-3414(a)(2)(A), a level 5 person felony; one count of aggravated battery in violation of K.S.A. 21-3414(a)(2)(B), a level 8 person felony; one count of operating a vehicle with a blood alcohol level above .08, a class B misdemeanor; and one count of failure to maintain a single lane. Lafoe received concurrent sentences of 41 months for the level 5 aggravated battery, 10 months for the level 8 aggravated battery, 6 months for the DUI, and was fined $25 for failing to maintain a single lane.

In pretrial and post-trial motions, Lafoe unsuccessfully argued that he was improperly charged with aggravated battery. He contended that the proper charge for his offense was simple or misdemeanor battery. Lafoe reasoned that when the legislature repealed the vehicular battery statute, the legislature contemplated that the former crime of vehicular battery would now be classified as simple or misdemeanor battery. Nevertheless, finding that K.S.A. 21-3412 and K.S.A. 21-3414 were clear and unambiguous, the trial court denied each motion. Whether the trial court erred

in denying Lafoe's motions on this ground raises a question of statutory interpretation. Interpretation of a statute is a question of law over which this court has unlimited review. See *State v. Arculeo*, 261 Kan. 286, 290, 933 P.2d 122 (1997).

Lafoe frames the issue as follows: "The question is whether the legislature intended that this crime [vehicular battery] remain a misdemeanor, under K.S.A. 21-3412, or elevate it to a level five person felony, K.S.A. 21-3414, with the same penalties that would be imposed if the victim died, involuntary manslaughter, K.S.A. 21-3404." Lafoe argues that the legislature intended that his acts be treated as a battery, not an aggravated battery, and that the legislature did not intend that he should receive the same punishment for a reckless act resulting in great bodily harm as he would for a reckless act resulting in death.

In support of this argument, Lafoe quotes comments from two sources. First, Lafoe quotes a passage from the Summary of Legislation, p. 126 (June 1992), which states:

"The crimes of battery and aggravated battery are expanded to include reckless acts. Previously, reckless acts causing bodily harm or great bodily harm were not adequately covered by law, *e.g.*, drive by shootings into a house. *Vehicular battery, under K.S.A. 21-3405b, is repealed under the rationale that this criminal act is covered under the revised battery statute under K.S.A. 21-3412.*" (Emphasis added.)

Second, Lafoe quotes a Judicial Council comment on the aggravated battery statute, which was drafted by law professor Emil Tonkovich and summarized in his article, *The Kansas Criminal Code: 1992 Amendments*, 41 Kan. L. Rev., Crim. Proc. Ed. 73, 84 (1993). The comment and article state that a reduced penalty for a reckless aggravated battery is provided to avoid a reckless act resulting in great bodily harm carrying a higher penalty than a reckless act resulting in death (involuntary manslaughter).

We disagree with Lafoe's interpretation of the battery statute. Moreover, before we can undertake the task of construing and interpreting an ambiguous statute, we must first find that the statute is ambiguous and, thus, justify the construction and interpretation of the statute. As it was so clearly stated in *Brown v. U.S.D. No. 333*, 261 Kan. 134, 142, 928 P.2d 57 (1996):

"The legislature is *presumed to have expressed its intent through the language of the statutory scheme it enacted.* Stated another way, '[w]hen a statute is plain and unambiguous, *the court must give effect to the intention of the legislature as expressed,* rather than determine what the law should or should not be.' [Citation omitted.] The court will not read into a statute that which the legislature has plainly excluded. [Citation omitted.]" (Emphasis added.)

In the instant case, the statutory language is clear and unambiguous. Simple or misdemeanor "[b]attery is: (a) Intentionally or recklessly causing bodily harm to another person; or (b) intentionally causing physical contact with another person when done in a rude, insulting or angry manner." K.S.A. 21-3412. In comparing the elements of misdemeanor battery and aggravated battery, this court determines that the legislature intended to distinguish between misdemeanor and aggravated battery based on the use of a weapon or the level of harm inflicted. For example, if the reckless conduct results in great bodily harm, the offender can be prosecuted under K.S.A. 21-3414(a)(2)(A). However, if the reckless conduct results in bodily harm with a deadly weapon, the offender can be prosecuted under K.S.A. 21-3414(a)(2)(B). Here, the jury made this exact distinction, determining that Lafoe recklessly *caused Robert Warne great bodily harm,* a severity level 5 offense; but that he recklessly caused Joan Warne bodily harm with a deadly weapon in a manner whereby great bodily harm, disfigurement, or death could have been inflicted, a severity level 8 offense.

Finally, the legislature intended that a reckless act causing great bodily harm carry the same punishment as a reckless act causing death. This conclusion is supported by the Judicial Council comment stating that the punishment for a reckless aggravated battery is reduced from a level 4 to avoid a reckless act resulting in great bodily harm carrying a higher penalty than a reckless act resulting in death. 41 Kan. L. Rev., Crim. Proc. Ed. at 84. Because Lafoe's construction of the statute would lead to confusion and injustice, Lafoe's argument fails.

Next, Lafoe argues that his convictions for operating a vehicle with a blood alcohol level over .08 and aggravated battery are multiplicitous. Our standard of review on questions of multiplicity is

plenary. *State v. Perry*, 16 Kan. App. 2d 150, 151, 823 P.2d 804 (1991).

"The Supreme Court has stated that multiplicity is 'the charging of a single offense in several counts of a complaint or information.' [Citation omitted.] The primary concern with multiplicity is that it creates the potential for multiple punishments for a single offense, which is prohibited by the double jeopardy clause of the Fifth Amendment of the United States Constitution and section 10 of the Kansas Constitution Bill of Rights. [Citations omitted.]" *State v. Eastridge*, 20 Kan. App. 2d 973, 975, 894 P.2d 243 (1995).

"The traditional test of whether charged offenses are multiplicitous is whether each charge requires proof of a fact not required in proving the other." 20 Kan. App. 2d at 975. "Multiplicity does not depend on whether the facts proved at trial are actually used to support the convictions of both offenses; rather, multiplicity turns on whether the necessary elements of proof of the one crime are included in the other." *State v. Mason*, 250 Kan. 393, Syl. ¶ 3, 827 P.2d 748 (1992); see *State v. Utterback*, 256 Kan. 340, 342, 886 P.2d 808 (1994).

The jury was instructed that "[r]eckless conduct is conduct done under circumstances that show a realization of the imminence of danger to the person of another and a conscious and unjustifiable disregard of that danger." Lafoe reasons that because he was charged with aggravated battery based upon reckless conduct, "it was necessary for the state to prove the DUI in order to establish the element of reckless conduct necessary for the aggravated battery charges, thus, the DUI conviction is multiplicitous with the aggravated battery charges."

Lafoe was charged with two counts of aggravated battery. In each, the jury was instructed that it could find that Lafoe recklessly caused the Warnes great bodily harm or that Lafoe caused the Warnes bodily harm with a deadly weapon. As to the DUI charge, the jury was instructed that the State had to prove that Lafoe drove or attempted to drive, and that while driving he had a blood alcohol concentration of .08 or more. Applying the *Mason* analysis, the State was not required to prove Lafoe's blood alcohol level to demonstrate reckless conduct. The jury could have found that Lafoe was reckless in working a double shift, staying up to play poker,

consuming several beers, and then attempting to drive. Therefore, the State was not required to prove Lafoe's blood alcohol level, or even that he was intoxicated, to prove that he was reckless. Because Lafoe confuses what the State may prove with what the State must prove, Lafoe's argument fails.

Lafoe's final claim of error is that the trial court erred in overruling his objections to prosecution comments during closing argument. He argues that the prosecutor improperly appealed to the jury's personal interests and commented upon facts not in evidence. Lafoe directs this court to the following portions of the State's closing argument:

"[PROSECUTOR:] This is not an accident. It's a collision. Even Mr. Warne, when he was testifying, referred to it as an accident. We have all been taught from the time we were little, oh, did you hear about the accident down the road where two cars ran into each other? Did you hear about the man in the accident where the man drove his car into his ex-wife's car and killed her? That's not an accident. It's a homicide. We've got to change our thinking in these kind of cases. This is a collision; it's not an accident.

"[DEFENSE COUNSEL]: Your Honor, I'm going to object to the characterization of 'our thinking' that coincides on a personal belief with the belief of the community, and that's objectionable under *State versus Jordan*.

"THE COURT: Thank you. Overruled.

. . . .

"[PROSECUTOR:] Number six, ladies and gentlemen, the time of day; let's look at that. It's a Sunday morning and it's 10:30. People are on their way with their families to church. The roads have all kinds of cars.

"[DEFENSE COUNSEL]: Objection, Your Honor, as to other people on their way to church. That's not a fact in this case.

"THE COURT: Overruled.

"[PROSECUTOR]: Your Honor, Sunday morning, 10:30, logical inference.

"It's not 2:30 in the morning after the bars have closed, ladies and gentlemen, when the roads are empty. It is 10:30 on a Sunday morning. Reckless conduct."

Lafoe argues that because the trial court overruled his objections, he suffered prejudice and was denied a fair trial. The State counters that the comments were reasonably related to the evidence or reasonably inferred from the evidence. The State further argues that even if this court finds that the comments were improper, any error was harmless.

Quoting from *State v. Green*, 254 Kan. 669, 684, 867 P.2d 366 (1994), our Supreme Court in *State v. Hays*, 256 Kan. 48, 68, 883 P.2d 1093 (1994), stated:

" 'The prosecution is given wide latitude in language and in manner or presentation of closing argument as long as it is consistent with the evidence adduced. Improper remarks made by the prosecutor in closing argument are grounds for reversal only when they are so gross and flagrant as to prejudice the jury against the defendant and to deny the defendant a fair trial. [Citation omitted.]' "

Under the facts of this case, the prosecutor's comments do not meet *Green*'s gross and flagrant standard. Thus, the trial court's failure to sustain the objection does not constitute reversible error.

Affirmed.